LEONARD and wife and others *vs.* CROMMELIN.

A person shall not claim an interest under an instrument (either deed or will)
without giving full effect to the same as far as he can, and renouncing any
right which would defeat it.

He who makes his election is bound to abide by it, unless he can restore the
property to its original situation ; and the taking possession binds the per-
formance, although there be a loss.

A father having a life estate, sold to H. the fee which belonged to his seven
children ; and covenanted they should join when of age. By will, he devised
his own property to them, upon condition of their ratifying the sale. A deed
of ratification and release was signed by five after they came of age ; one
of the others died without having done so, and A., the remaining son, took
his own share of the father's estate, but did not execute the deed until after
H.'s death.   A perpetual injunction from proceeding against the devisees of
H. for his share of the property sold by the father was decreed against A.;
and he was ordered to execute a release to them as well of the same as of
his right in his deceased brother's share.

THE bill in this cause was filed to restrain perpetually the
defendant, Alfred Crommelin, from proceeding in an action of
ejectment for one undivided seventh part, and the one-third of
another seventh part of a lot on the notherly side of Oak street
in the city of New York ; and to compel him to release the
same to the complainants.

It appeared, that on the sixth day of May one thousand
eight hundred and six, James Crommelin, the father of the de-
fendant, being entitled to a life estate in the lot in question, of
which the remainder in fee was in his seven sons, several of
whom were infants, and the defendant the youngest of them ;
and Christopher Halstead at that time in possession as tenant
for a term of years, an agreement was made between the
said father and Halstead, by which the former, in his own be-
half and on behalf of his children agreed to sell the fee of the
lot to the latter for the sum of twelve hundred and fifty dollars,
(and which was then its full value.)

In pursuance of the agreement, a deed to Halstead was
prepared and executed by the two eldest sons, who were then

of age, for their two-sevenths of the lot in fee, bearing date the seventh day of May one thousand eight hundred and six. At this time, Halstead paid the whole of the purchase money to the father, and took his receipt on the back of the deed for the same : upon an understanding or stipulation of procuring his other sons to execute conveyances of their respective shares as they severally came of age.

James Crommelin, the father, died possessed of a large estate situated within the city of New York and in the State of New Jersey. By his will he devised the same to his children, as tenants in common, and to be divided between them when Alfred, who was the youngest child, should arrive at lawful age. The will recited the fact of the father's having sold a part of the children's property in the city of New York (in which he had only a life estate) with the assent of his children ; of his having become bound that, as they severally arrived at age, they should confirm the sales by executing deeds ; and also, of his two eldest sons having already done so as to their shares. And he ordered and declared, in case either of his children should refuse or neglect to confirm the sales so made, that they should not be entitled to the proportion of his estate devised to them, but the same should be and remain as a security to the purchasers against the person or persons refusing to confirm the sale.

Sometime in the year one thousand eight hundred and thirteen a release or conveyance from the other five sons to Halstead was drawn. It was executed by three of them after they came of age, and was delivered to Halstead. Before the remaining two children, namely, Charles and Alfred, were competent to execute the deed, the death of Christopher Halstead took place. He died in the month of September one thousand eight hundred and seventeen.

In the year one thousand eight hundred and twenty-one the son Charles died intestate and without issue. The deed had not been executed by him. His surviving brothers were his heirs at law.

Previous to the month of July one thousand eight hundred and twenty-three, Alfred, who was the defendant, came of age ;

1831.

LEONARD
v.
CROMMELIN.

1831.

LEONARD
v.
CROMMELIN.

and on the twenty-third day of the same month he undertook to ratify and confirm the sale by executing the deed last mentioned, and acknowledging the same before a commissioner in due form of law : but by reason of the previous death of Halstead, it was inoperative as a release or conveyance of the defendant's title. Owing to this circumstance, he afterwards brought his action of ejectment for the purpose of being let into the possession and enjoyment of his original one-seventh part, and a derivative share of the one-seventh which had been vested in Charles ; and which the complainants held and claimed title to as the devisees of Christopher Halstead.

It likewise appeared, the children had ratified one other sale which their father had made of property situated in the city of New York, wherein they had the remainder in fee and under circumstances in all respects similar to the sale to Halstead, by executing deeds of release to the purchaser.

Mr. *J. A. Lee*, and Mr. *Peter A. Jay*, appeared for the complainants.

Mr. *Robert Manning*, for the defendant.

*December* 19.    THE VICE-CHANCELLOR.    The ground upon which the complainants seek to be quieted in their right of property and possession is, that the defendant and his deceased brother Charles, as well as all the other sons of James Crommelin who executed the deed to Halstead, accepted of their shares of the father's estate under his will and thereby made their election. And this election, it is insisted, was binding upon Charles in his lifetime after he came of age, as well as upon Alfred, so that consequently, the latter ought now to release and convey all his title in the premises.

The evidence shows, in the most satisfactory manner, how all the sons—at different times and when they were of full age, executed deeds of conveyance of various parcels of their father's real estate or united in the sales thereof (and which he had devised to them;) as well as, the defendant's selling and conveying, besides other property, his share and interest in his

father's homestead. It likewise appears, the children ratified one other sale which their father had made. And it is very manifest the defendant intended to confirm the sale made to Halstead when he proceeded in the month of July one thousand eight hundred and twenty-three, to execute and acknowledge the deed prepared in the year one thousand eight hundred and thirteen; and which deed only required the signatures of Charles and himself in order to render the title under it complete. But this act proved ineffectual: because Halstead was dead.

I think, however, it goes far, in connection with other circumstances, to preclude the right of the defendant to set up a claim of title to the premises thus intended to be released; for it is fairly to be inferred that his object was to show a compliance with the conditions of his father's will in order to vest in himself an absolute title to a share of his father's estate, and better enable him to dispose of the same.

He undoubtedly, had an election when he came of age, either to take under the will of his parent, or disaffirm, so far as his interest extended, the sale made to Halstead. But he could not do both. It was clearly a case in which he was bound to make an election. The devise was upon the express condition of his ratifying the sale by executing a deed to the purchaser, for otherwise he was not to be entitled to take under the will; and in the latter event, his share of the estate was to remain as a security to the purchaser against his claims. It is an elementary principle, upon which the doctrine of election is founded, that a person shall not claim an interest under one instrument (either deed or will, for it applies to both) without giving full effect to it as far as he can, and renouncing any right to property which would defeat the disposition: (*Thelluson* v. *Woodford*, 13 *Ves.* 220;) or, to use Lord Rosslyn's words, as quoted in *Moore* v. *Butler*, 2 *Sch. & L.* 267, " no person puts " himself in a capacity to take under an instrument without " performing the conditions of the instrument; and the condi- " tions may be express or implied."

The acts of the defendant in relation to a share of his father's

27

estate clearly show his acceptance of the provisions of the will. The parcels of the estate which he concurred in selling could only have been held or claimed by him as a devisee, because he could not be permitted to take as heir by descent in the presence of an express valid devise. He was then bound to perform the condition annexed to the gift. I see no escape from the conclusion of his having declared his election.

It is true the defendant denies he ever elected to take under the will of his father and ratify the sale of the lot of ground in question; and he endeavours to show, not only, that the proceeds of the sale of his father's estate went to pay debts, or were held by his eldest brother James, who administered with the will annexed, and never accounted for or divided the proceeds amongst the devisees, but also, that the amount which he, the defendant, received from the sale of the homestead was less than his father actually owed to him for moneys received from other property sold by the father and which belonged to his children.

These circumstances, however, from the view which I have taken, cannot be permitted to vary the case. The bill is not filed to compel the defendant to make his election. It proceeds upon the ground of his having already made it. Although he might not have been bound, unless he were cognizant of his rights, yet he cannot now retract: because he cannot now place the complainants (with respect to their rights) in the same situation which they would have stood in, provided his acts had not been performed.

The share of the father's estate devised to the defendant was pledged to the complainant as a security; and this security, he has taken away and cannot restore. It would, consequently, be unjust towards them to permit a disaffirmance of his own act to their prejudice. If he has been deceived into a loss by the maladministration of his brother or by any mistaken views of the value of the property devised to him, it is his misfortune. He was not bound to make his election until he could first ascertain the value of his patrimony; but, having made it, he is bound to abide by the determination, unless he can restore

the property to its original situation: *Edwards* v. *Morgan*, 13
*Price*, 782; *S. C.* 1 *M'Clel.* 541, and on appeal 1 *Bligh's N. S.*
401. In the case of *The Attorney-General* v. *Christ's Hospital*,
3 *Bro. C. C.* 165, it was held, that where an estate is given
upon a condition, the taking possession binds to the performance
of it, although there be a loss. The defendant is, therefore,
bound to ratify the sale so far as respects his own one-seventh
part of his father's estate.

As to his share in his deceased brother Charles's estate, it
stands upon the same footing. Charles must be considered as
having made his election, in the like manner and by unequivocal
acts of ownership after he came of age and in connection with
his father's will. It also appears the defendant, as well as the
others claiming to be vested with the title by descent, have in-
termeddled with some remaining interest in the estate and
treated it as the property of the decedent.

Upon the whole, I must declare the defendant precluded
from setting up any title whatever to the lot in question; and,
shall decree, that he be perpetually enjoined from proceeding
in the action of ejectment, and that he execute a release to the
complainants of all his right, title and interest in the lot of
land. He is, also, to pay the complainants their costs of this
suit to be taxed.